## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as conservator for Federal National Mortgage Association, and FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) ) ) ) | 3:25-CV-00240 (SVN) |
| *Plaintiffs*, | ) | November 26, 2025 |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF AVON and FARMINGTON VALLEY HEALTH DISTRICT, | ) ) | |
| *Defendants*. | ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND GRANTING DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

This is an action for declaratory judgment, to quiet title, and for corresponding injunctive relief, brought by Plaintiffs Federal Housing Finance Agency ("FHFA"), on its own behalf and as Conservator of and on behalf of the Federal National Mortgage Association ("Fannie Mae"), and Fannie Mae against the Town of Avon (the "Town") and the Farmington Valley Health District (together, "Defendants"). Plaintiffs allege that Defendants improperly recorded a judgment lien and prosecuted a foreclosure action related to 24 Brentwood Drive, Avon, Connecticut (the "Avon Property"), as to which Plaintiff Fannie Mae holds a mortgage, in violation of 12 U.S.C. § 4617(j)(3)—known colloquially as the Federal Foreclosure Bar. The Court issued a temporary restraining order ("TRO") on February 19, 2025, staying the pending state foreclosure action and enjoining Defendants from taking title to the Avon Property. *See* Order, ECF No. 23. That order remains in effect pending further order of the Court.

At present, Plaintiffs seek a preliminary injunction preventing Defendants from taking title to the Avon Property pursuant to a state judgment of strict foreclosure, arguing that they are likely to succeed on the merits of their claim that the Federal Foreclosure Bar protects the Avon Property from the attachment of involuntary liens and foreclosure absent FHFA's consent (which it does not intend to grant). *See* Mot. for Prelim. Inj. and TRO, ECF No. 2. Defendants oppose the motion and seek both dissolution of the TRO and dismissal of the complaint on the grounds that Plaintiff's central claim rests on a misreading of the relevant statutes. *See* Defs.' Memo. of Law, ECF No. 37.

The Court addresses the parties' pending motions in this ruling. For the reasons described below, the Court agrees with Defendants. Therefore, Defendant's motion to dismiss is GRANTED and Plaintiffs' request for a preliminary injunction is DENIED. The temporary restraining order issued on February 19, 2025, is ordered dissolved, but the Court stays the execution of the dissolution pending a status conference with the parties about the appropriate next steps in this litigation.

## I.    RELEVANT BACKGROUND

### A.  HERA

Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, *codified at* 12 U.S.C. § 4511 *et seq.*, in response to the 2008 financial crisis. HERA created a suite of reforms intended to address concern for the financial health of certain "critically undercapitalized regulated entities," including Fannie Mae, the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Federal Home Loan Banks. 12 U.S.C. § 4617. As part of one such reform, the statute enabled FHFA to act as conservator for Fannie Mae and Freddie Mac. *Id.* § 4617(a).

In keeping with the purposes of HERA, § 4617 grants FHFA broad authority to take any action as may be "necessary to put the regulated entity [here, Fannie Mae] in a sound and solvent condition" and "appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity." *Id.* § 4617(b)(2)(D). It also carves out special exemptions for FHFA when it acts as a conservator or receiver, the most salient of which, for present purposes, are the "property protection[s]" codified at 12 U.S.C. § 4617(j)(3). That provision, the Federal Foreclosure Bar, mandates that "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." Shortly after HERA's passage, FHFA's Director placed Fannie Mae in federal conservatorship, thereby "immediately succeed[ing] to all rights titles, powers, and privileges" of Fannie Mae and bringing all of Fannie Mae's property within the protective ambit of the Federal Foreclosure Bar. *Id.* § 4617(b)(2)(a).

### B. The Avon Property

The facts alleged in Plaintiffs' complaint are taken as true for the purpose of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this instance, the Court also preliminarily accepts the uncontested facts alleged in the complaint as true for the purpose of evaluating Plaintiffs' preliminary injunction motion. *See, e.g.*, *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 296 F. Supp. 3d 614, 616 (S.D.N.Y. 2017) (drawing undisputed facts from the complaint and answer for purposes of a preliminary injunction) (citing *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997)).

In 2001, Nikolay Synkov and Tatyana Ishutkina (the "Borrowers") took out a mortgage loan on their home located at 24 Brentwood Drive in Avon, Connecticut. Compl., ECF No. 1 ¶ 2. The mortgage lien and underlying mortgage loan, originally held by CitiMortgage, were sold to

Fannie Mae the same year. *Id.* ¶¶ 2–3. Fannie Mae has since remained the owner of the debt and the beneficial owner of the mortgage. *Id.* ¶ 3. CitiMortgage is now the mortgage assignee and acts as loan servicer on Fannie Mae's behalf. *Id.* ¶ 4. The parties do not dispute that Fannie Mae's mortgage interest was unaffected by the assignment to CitiMortgage. When Fannie Mae was placed into conservatorship, FHFA succeeded to Fannie Mae's rights, including, according to Plaintiffs, any "title interest Fannie Mae has" in the Avon Property. *Id.* ¶ 13.

In July of 2021, the Town of Avon brought an action in Connecticut Superior Court against the Borrowers for alleged violations of municipal regulations relating to the Avon Property. *Id.* ¶ 31.[1] On August 25, 2021, the Superior Court entered judgment in favor of the Town and granted it the right to attach a judgment lien in the amount of $158,170.51—consisting of $128,650 in civil penalties, $17,052.37 in attorney's fees, and $12,468.14 in costs incurred in pursuing the action—on the Avon Property. *Id.* ¶ 32. On December 23, 2021, the Town recorded the judgment lien against the Avon Property. *Id.* ¶ 33. There are no allegations in the complaint that the judgment lien takes priority over Fannie Mae's mortgage. Indeed, Defendants concede that, "[s]ince the Town's judgment lien was recorded after the Mortgage, it is junior in title priority to the Mortgage, i.e. subsequent in right." ECF No. 37 at 2, n.1.

On February 28, 2024, the Town filed an action in the Connecticut Superior Court to foreclose the judgment lien, naming the Borrowers and CitiMortgage as defendants (the

---

[1] Defendants have submitted exhibits in connection with their motion to dissolve the TRO and opposition to the motion for a preliminary injunction, through the affidavit of Brandon Robinson, the Town Manager. *See* Robertson Aff., ECF No. 36-1. These exhibits include photographs of the Avon Property that they claim motivated the Town's actions against the Borrowers. *See id.* at 5–8. While the Court may accept affidavits for the purposes of deciding a motion for preliminary injunction, *see Elrod v. Burns*, 427 U.S. 347, 350 (1976), it generally may not consider matters outside of the complaint for purposes of a motion to dismiss, without converting the motion into one seeking summary judgment. *See* Fed. R. Civ. P. 12(d). As the Court does not find Defendants' exhibits to be material to the issues in this decision, it does not consider them in connection with any of the parties' motions.

"Foreclosure Action"). ECF No. 1 ¶ 34. The Town later withdrew its claims as to CitiMortgage, unilaterally dismissing it from the Foreclosure Action. *Id.* ¶ 37. The Town then filed a motion for judgment of strict foreclosure, which the Superior Court entered on January 6, 2025. *Id.* ¶¶ 38–39. The judgment set February 18, 2025, as the first law day, with the Town to take title to the Avon Property on February 20, 2025. *Id.* ¶ 39, 44.

Plaintiffs filed the instant lawsuit on February 14, 2025, along with an emergency motion for a TRO and preliminary injunction. ECF Nos. 1, 2. The complaint contains two causes of action: (1) a claim for declaratory and injunctive relief under § 4617, requesting that the Court declare the Town's judgment lien void, null, and extinguished under federal law and requesting preliminary and permanent injunctive relief directing Defendants to release the existing judgment liens, refrain from pursuing the Foreclosure Action, and refrain from recording or attaching involuntary liens to the Avon Property in the future; and (2) a claim for quiet title, requesting an order that quiets title to the Avon Property in Plaintiffs' favor and extinguishes the Town's judgment lien. ECF No. 1 at 9–10.

This Court granted the request for a TRO on February 18, 2025, staying the Foreclosure Action and preventing Defendants from taking title to the Avon Property. ECF No. 23. On April 4, 2025, the Court ordered that the TRO stay in effect until further order of the Court. Order, ECF No. 38. In the intervening months, the parties fully briefed the pending motions, the Foreclosure Action has been stayed, and the Town has not taken title to the Avon Property.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When

determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

### B. Preliminary Injunction

To obtain a preliminary injunction, a party "must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, L.L.C. v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (citation omitted). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).

Typically, a showing of irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'" *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). But HERA obviates any need for Plaintiffs to show that "the injury, loss, or damage is irreparable and

immediate." *See* 12 U.S.C. §§ 4617(b)(16)–(17); *N.J. Carpenters Health Fund v. Novastar Mortg., Inc.,* 28 F.4th 357, 371 (2d Cir. 2022) ("HERA also allows a conservator or receiver to ask the court to issue an attachment or an injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure without the usual need to show imminent irreparable injury."). While Plaintiffs need not demonstrate irreparable harm, HERA does not exempt them from showing either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits and a balance of hardships tipping in Plaintiffs' favor. *See, e.g.*, *F.D.I.C. v. U.S. Tr. Co.*, 793 F. Supp. 368, 370 (D. Mass. 1992) (examining the FDIC's likelihood of success on the merits under the analogous provision of law in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA")).[2]

## III. DISCUSSION

### A. Approach to Concurrent Motions in This Case

The Court has opted to resolve the motion to dismiss, the motion to dissolve the TRO, and the motion for preliminary injunction concurrently because all of these motions turn on the same question of law. Plaintiffs appear to have rested their briefing in support of the motion for preliminary injunction on their likelihood of success on the merits; therefore, as it relates to the preliminary injunction motion, the Court will consider only this issue. The relevant facts are not in dispute, so all of the motions turn on the same, wholly legal question: namely, whether HERA

---

[2] Courts tasked with interpreting provisions of HERA often look to the analogous provisions of law in FIRREA, which was passed in the wake of the savings and loan crisis of the late 1980s and provided the Federal Deposit Insurance Corporation ("FDIC") with property protection rights when it acted in its capacity as receiver, akin to HERA's property protections for FHFA. *See, e.g.*, *N.J. Carpenters Health Fund*, 28 F.4th at 373–75 (analyzing § 4617(f) with reference to the "virtually identical" provision in FIRREA); *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 893 (3d Cir. 2018); *Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 402 (7th Cir. 2018). Of particular relevance here, FIRREA provides: "No property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]." 12 U.S.C. § 1825(b)(2).

bars Defendants' attachment and foreclosure of a judgment lien on the Avon Property. If so, Plaintiffs have stated a plausible claim for relief and are entitled to an injunction. If not, no claim has been stated and thus no relief is warranted, preliminary or otherwise.

B. The Scope of the Federal Foreclosure Bar

As noted above, HERA expressly permits FHFA to take "such action as may be—(i) necessary to put [Fannie Mae and Freddie Mac] in a sound and solvent condition; and (ii) appropriate to … preserve … [their] assets and property." 12 U.S.C. § 4617(b)(2)(D). In line with this principle, the Federal Foreclosure Bar provides that "no property of the Agency [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FHFA]" and that no "involuntary lien" may "attach" to "property of the [FHFA]." 12 U.S.C. § 4617(j)(3). Defendants are alleged to have violated the bar by attaching a judgment lien on the Avon Property and later attempting to foreclose on that lien.

Whether Defendants' lien is barred by federal law and void *ab initio* turns on the breadth of the statutory phrase "property of the Agency." HERA does not define the term. "[W]hen dealing with an undefined federal statutory term," a court is to interpret the term "in accordance with its ordinary common sense meaning . . . at the time of its enactment . . . and in light of its 'context' and its 'place in the overall statutory scheme.'" *A.R. v. Conn. State Bd. of Educ.*, 5 F.4th 155, 166 (2d Cir. 2021) (internal citations omitted).

Here, the meaning of the phrase "property of the Agency" appears to be an issue of first impression in the Second Circuit, and the parties have not pointed the Court to any binding authority interpreting the phrase in HERA (or the nearly identical provision of FIRREA). In asking the Court to find Defendants' lien void *ab initio*, Plaintiffs posit that "property of the Agency" is broad enough to reach the underlying property encumbered by a Fannie Mae mortgage, and

therefore that no involuntary lien may attach to the underlying Avon Property. Defendants maintain that where Fannie Mae holds a mortgage on a piece of real property, the "property of the Agency" begins and ends with the mortgage lien itself, such that an involuntary lien is not void from the outset and may attach to the Avon Property. With the parties' competing positions in mind, the Court thus begins the task of attempting to derive the phrase's common sense meaning, in the context of the federal statutory scheme.

In determining the scope of the phrase, a brief primer on Fannie Mae and its conservatorship by FHFA is helpful. During the Great Depression, the federal government "worked to stabilize and strengthen the residential mortgage market." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 84 (2017). As part of these efforts, the Federal Housing Administration chartered Fannie Mae to, among other purposes, "'establish a market for [FHA-insured] first mortgages' covering new housing construction." *Id.* at 85 (citation omitted). Fannie Mae currently "continues to participate in the secondary mortgage market" by, among other things, purchasing mortgages that meet its eligibility criteria and packaging those mortgages into mortgage-backed securities for sale to investors. *Id.* at 86. As Plaintiffs acknowledge, "Fannie Mae's federal statutory charter authorizes it to purchase and deal in secured 'mortgages.'" ECF No. 2 at 3 (citing 12 U.S.C. §§ 1717(b), 1719).

As noted above, during the economic crisis in the summer of 2008, Congress passed HERA, which established FHFA as an independent federal agency with regulatory and oversight authority over Fannie Mae and other entities. In September of 2008, FHFA's director placed Fannie Mae into conservatorship and succeeded to its "rights, titles, powers, and privileges." *See id.* at 3; 12 U.S.C. § 4617(b)(2)(A). According to Plaintiffs, FHFA has stated that it will not consent to the foreclosure or other extinguishment of any Fannie Mae lien or other property

interest.  ECF No. 2 at 4.  With that background in mind, the Court approaches the task of ascertaining the common sense meaning of the phrase "property of the Agency" (FHFA) in HERA, for purposes of the present case.

To start, it is clear that the mortgage originally given by the Borrowers to CitiMortgage, and then purchased by Fannie Mae, is the property of the Agency and is thus subject to the protections of the Federal Foreclosure Bar.  *See* 12 U.S.C.§ 4617(b)(2)(A).  Federal courts have long espoused the view that "property" does not begin and end with fee simple ownership, but rather encompasses other types of interests, such as mortgage liens and loans.  *See, e.g.*, *Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979) (rejecting contention that a mortgage held by a federal instrumentality was not "property" of the United States, in a Supremacy Clause challenge); *Matagorda Cnty. v. Russell Law*, 19 F.3d 215, 221 (5th Cir. 1994) (noting that the definition of "property" is governed by federal law, and holding that the FDIC's lien interest in a property was "property of the [FDIC]" under FIRREA's nearly identical foreclosure bar); *Nationstar Mortg., LLC v. RFB Props., LLC*, 752 F. Supp. 3d 136, 142 (D.D.C. 2024) ("'Property' encompasses not just real property . . . but also property interests more broadly, including mortgage liens and loans as well as fee interests."), *reconsideration denied*, 2025 WL 2397751 (D.D.C. Aug. 13, 2025).

Thus, Plaintiffs' mortgage interest in the Avon Property is undoubtedly conservatorship property protected under the Federal Foreclosure Bar, to which no involuntary lien can attach, and which cannot be foreclosed without FHFA's consent.  *See, e.g.*, *Berezovsky v. Moniz*, 869 F.3d 923, 929 (9th Cir. 2017) ("[T]he statutory language cloaks [FHFA] property with Congressional protection unless or until the [FHFA] affirmatively relinquishes it.").  This is consistent with Fannie Mae's business model of buying mortgages, and thus Congress must have meant for FHFA's "property" to include *at least* Fannie Mae's interest in the mortgages it was purchasing.

The critical question, however, is whether Plaintiffs are correct that "property of the Agency" goes beyond the mortgage interest, to an interest in the real property encumbered by the mortgage.

The Court cannot accept the expansive view of "property" that Plaintiffs advance. First, Plaintiffs' heavy reliance on Connecticut's status as a "title theory" state is unavailing. In most states, a mortgagee is considered to hold only a lien, and the title to the property remains in the hands of the borrowers. *See, e.g.*, 12 Thompson on Real Property, Thomas Editions § 101.01 (2025). This is known as the "lien theory" of mortgages. *Id.* But in Connecticut, by both common law and statute, "a mortgagee . . . is deemed to have taken legal title under the execution of a mortgage on real property," while the mortgagor holds equitable title. *Conference Center, Ltd. v. TRC*, 189 Conn. 212, 218 (1983); *see* Conn. Gen. Stat. § 47-36h. Thus, the argument goes, Plaintiffs have a property interest in the underlying Avon Property by virtue of holding the legal title to it. *See* ECF No. 2 at 8–9.

But, in interpreting a federal statute, the relevant "statutory scheme" at issue is the federal statutory scheme, "not the scheme suggested by the collection of laws, regulations, and constitutional directives of a particular state." *A.R.*, 5 F.4th at 166. A holding that the scope of the phrase "property of the Agency" in HERA turns on whether the relevant state uses the title theory or lien theory of mortgages would lead to inconsistent interpretations of HERA in different states. *See id.* (recognizing that, were the federal court to "look to the laws of each state" for the definition of a term in a federal statute, it "could result in fifty different interpretations" of the federal statute). Thus, Plaintiffs cannot simply rely on Connecticut's status as a "title theory" to support their position that "property" in § 4617(j)(3) extends beyond the interest in the mortgage. *See Matagorda Cnty.*, 19 F.3d at 221 (rejecting premise that "property" of the FDIC under FIRREA's foreclosure bar should be defined by state law).

11

The Court recognizes that property law is traditionally governed by states, however.  *See Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land in the City of New London, New London Cnty., State of Conn.*, 766 F.2d 685, 689 (2d Cir. 1985) ("Real property law is a subject entrusted almost exclusively to the states").  Thus, a closer examination of the viability of the title theory as a means of defining a property interest may be appropriate.

From that examination, it is clear Connecticut does not treat mortgagees as holding a property interest in the underlying real property.  Notwithstanding the theoretical division of interests, the Connecticut Supreme Court has recognized for more than a century that "[i]n substance and effect … and except for a very limited purpose, the mortgage is regarded as mere security for the performance of the duty described in the mortgage deed . . . 'the mortgagee has rather a *power* than an *interest*, the use of which is strictly limited to the collection of the debt or enforcement of the duty which the mortgage was intended to secure." *McKelvey v. Creevey*, 72 Conn. 464, 467 (Conn. 1900) (quoting *Porter v. Seeley*, 13 Conn. 564, 573 (Conn. 1840)) (emphasis added); *Red Rooster Const. Co. v. River Assocs., Inc.*, 224 Conn. 563, 569–571 (1993) (citing *McKelvey* and *Waterbury Savings Bank v. Lawler*, 46 Conn. 243, 245 (1878) ("the mortgagor before foreclosure is  owner of the property; his interest is real estate, to be conveyed, attached, taxed, and inherited only as such, while the interest of the mortgagee is mere personal estate")).  This long line of Connecticut case law lends support to Defendants' position that,

notwithstanding Connecticut's designation as a title theory state, holding a mortgage on real property here does not confer the rights attendant to a fee interest in that real property.[3]

The Court also finds instructive the Connecticut Appellate Court's consideration of this question in the context of 12 U.S.C. § 1825(b)(2), the analogous provision of FIRREA.  *See 37 Huntington St., H, LLC v. City of Hartford*, 62 Conn. App. 586, 594–98 (2001).  In *37 Huntington Street*, the Appellate Court addressed the question of whether an owner of real property was immune from municipal tax liens that accrued during the time when the FDIC held a mortgage on the property, in its capacity as receiver for a failed Connecticut banking institution.  *Id.* at 589–90. The court noted that "[f]ederal law permits a federal agency that has been appointed receiver to acquire a property interest in the form of a fee interest or in the form of a security interest," and that the FDIC's property interest "was that of a mortgagee rather than of a fee holder."  *Id.* at 594. After analyzing what it characterized as the "sparse and divided" case law on the question of whether "the protection that federal law affords to the FDIC as mortgagee" extends "to the underlying property interest of a different entity, the private owner and mortgagor of the underlying fee," it concluded that "FDIC immunity from the attachment of involuntary tax liens does not extend beyond FDIC's own property as a mortgagee," and that, to the extent Connecticut law was relevant, it supported that conclusion.  *Id.* at 594–97.

---

[3] More recently, Connecticut courts have been tasked with interpreting whether a mortgage is a "conveyance" under state statutes.  For instance, in *Town of Groton v. Mardie Lane Homes, LLC*, 286 Conn. 280, 290 (2008), the Connecticut Supreme Court interpreted a state statute related whether subdivision lots had been "conveyed" through mortgage interests and recognized that although, under the title theory, "the mortgagee gains legal title to the property, the mortgagor remains its true owner."  *Id.*  It continued:  "The series of legal fictions of which the title theory is comprised cannot turn the transfer of a mortgage interest into the conveyance of a lot."  *Id.*; *but see Astoria Fed. Mortg. Corp. v. Genesis Ltd. P'ship*, 167 Conn. App. 183, 197 (2016) (in addressing whether a mechanic's lien is a "conveyance" for purposes of state recording statute, citing cases holding that Connecticut courts have held a mortgage is a "conveyance" under that statute).  As these rulings addressed the meaning of a different term—conveyance—in state statutes, they are not dispositive on the question of a mortgagee's interest in property under state law.

Thus, based on its review of these Connecticut cases, the Court concludes that, to the extent that Connecticut law is relevant here, it does not support Plaintiffs' expansive reading of the term "property" in HERA under the title theory.

Nor can the Court accept Plaintiffs' contention that allowing attachment of a judgment lien (and foreclosure on that lien) would impair their interests in the Avon Property, as Plaintiffs do not allege, and the record does not indicate, that Defendants' judgment lien takes priority over Plaintiffs' mortgage. *See* ECF No. 37 at 2, n.1 (Defendants' concession that foreclosure of its judgment lien would not affect FHFA's mortgage, which is senior in priority). It is true that courts consistently invalidate any foreclosure, garnishment, or attachment of a lien that impairs or extinguishes the property of FHFA (or the other regulated entities). *See, e.g.*, *Fed. Hous. Fin. Agency v. City of Ansonia*, 549 F. Supp. 3d 242, 247 (D. Conn. 2021) (Connecticut statute authorizing towns to impose anti-blight penalties and impose liens to secure payment of those penalties was preempted because it threatened FHFA assets); *Berezovsky*, 869 F.3d at 931 (Nevada statute, which allowed homeowners associations to foreclose and "automatically extinguish the Agency's property interest without the Agency's consent," was preempted by the Federal Foreclosure Bar); *see also Matagorda Cnty.*, 19 F.3d at 222 (state tax lien could not be foreclosed under FIRREA without consent of FDIC). In several recent decisions, for example, courts have consistently held that the Bar invalidates the attachment of priority or super-priority liens to real property encumbered by FHFA liens. *See, e.g.*, *Berezovsky*, 689 F.3d at 930; *Nationstar Mortg. LLC v. Saticoy Bay LLC, Series 9229 Millikan Ave*, 996 F.3d 950, 958 (9th Cir. 2021) (finding Nevada super-priority lien scheme preempted). These super-priority liens have been found to be void *ab initio*. *See, e.g.*, *RFB Properties*, 752 F. Supp. 3d at 144.

But this case law offers insufficient support for the idea that the Bar operates to uniformly and simplistically prohibit *all* new liens from attaching to *any* real property already encumbered by an FHFA lien.  First, the super-priority lien cases Plaintiffs cite do not explicitly address the scope of the phrase "property of the [FHFA]."  Instead, they address whether past foreclosures of FHFA's liens by operation of super-priority lien schemes were permissible under the Bar, and concluded that they were not, as they occurred without FHFA's consent.  The only case Plaintiffs point to that supports such a blanket reading of the Bar is the District of the District of Columbia's decision in *RFB Properties*, which extends the definition of "property" to "any property encumbered by a Fannie Mae lien, because any such attachment impairs protected conservatorship property."  *Id.*, 752 F. Supp. 3d at 143.  While the D.C. court admittedly uses broad language suggesting support for Plaintiffs' position, *see id.*, its decision is not binding on this Court. Moreover, it was addressing the attachment and foreclosure of a super-priority lien authorized by local regulation; a condominium association had attempted to unilaterally foreclose on a condo unit, purporting to "extinguish[] Fannie Mae's secured first deed of trust on the Property" without FHFA's consent.  *See id.* at 140.  Thus, in that context, where the lien and subsequent foreclosure would necessarily impair protected conservatorship property, its holding that the Federal Foreclosure Bar applies might very well be correct (even if its definition of "property of the Agency" in the Bar is overly expansive).

Here, by contrast, Plaintiffs have not alleged facts suggesting that their mortgage interest is threatened in any non-speculative way by virtue of the Town's actions.  Rather, Defendants' attachment and foreclosure of a junior lien would cause ownership of the Avon Property to pass subject to FHFA's unimpaired, unextinguished mortgage.  *See Saunders v. KDFBS, LLC*, 335 Conn. 586, 595 (2020) ("Because 'the foreclosure of a mortgage or lien can be binding only on

subsequent encumbrancers, a first mortgagee cannot be affected by the foreclosure of a subsequent interest. Thus, any sale ordered by a judgment in such action must be subject to the prior encumbrance.'") (citation omitted); *Town of Voluntown v. Rytman*, 27 Conn. App. 549, 556 (1992) (recognizing that a foreclosure by sale "furnishes conflicting claimants an ideal forum for litigating their differences *without prejudicing prior encumbrancers*") (emphasis added), *cert. denied*, 223 Conn. 913 (1992); *Mortg. Electronic Registration Systems, Inc. v. White*, 278 Conn. 219, 230 (2006) ("If [an] estate is encumbered by a valid mortgage that was not foreclosed, then the estate that passes to the purchaser [in a foreclosure sale] is subject to that mortgage."). Although Plaintiffs posit that, if the Avon Property were to be sold, a new owner may not pay FHFA's mortgage—thereby impairing FHFA's ability to recover on the mortgage debt—that argument is only speculative at this point, and is not pleaded in Plaintiffs' complaint (nor supported by any evidence in support of their request for a preliminary injunction). *See 37 Huntington Street*, 62 Conn. App. at 598 (finding argument that the existence of tax liens would impair the FDIC's security interest in a property unsupported by the record).

Outside the context of an attempt to impose a superior lien, Plaintiffs have offered no explanation for why the Bar's protections might inherently apply to all real property encumbered by a Fannie Mae lien.[4] Indeed, courts that have confronted this issue outside the context of super-priority liens have indicated the opposite. In interpreting the nearly-identical language of FIRREA,

---

[4] The parties dispute the relevance of another D.D.C. case, *NewRez, LLC v. Francis*, 2024 WL 4314016 (D.D.C. Sept. 11, 2024), in which there was a pending motion for reconsideration at the time of the briefing in this case. The motion for reconsideration was granted in light of a "clear error of law"; the court now holds that a foreclosure sale based on a super-priority lien must be deemed void *ab initio*. *NewRez*, 2025 WL 2701644, at *1 (D.D.C. Sept. 22, 2025). This new holding eliminates a conflict between *NewRez*, 2024 WL 4314016, and *RFB Properties*, 752 F. Supp. 3d 136, but is equally inapplicable to these facts because it does not extend *RFB Properties*' holding outside the context of a super-priority lien.

for example, the Fifth Circuit has held that "the FDIC never had more than a lien," (*i.e.*, the agency's property was limited to its lien), and "it never had the right to prevent transfer of the Property (or an interest therein) subject to its lien." *See First State Bank-Keene v. Metroplex Petroleum Inc.*, 155 F.3d 732, 738 (5th Cir. 1998). There, because the appellants took the real property in a tax sale "subject to the FDIC lien" which "was not devalued, extinguished, or disturbed in any manner" through the tax sale at issue, the court held that no deprivation of the FDIC's property occurred, such that the tax sale of the property need not be voided under FIRREA. *Id.* at 739. That reasoning applies equally here, where it is undisputed that Plaintiffs' mortgage interest will be preserved in any foreclosure.

Finally, there is insufficient indication that Congress, in passing HERA, intended the Federal Foreclosure Bar to be read as broadly as Plaintiffs suggest. HERA aims to "preserve and conserve the assets and property of the regulated entit[ies]," 12 U.S.C. § 4617(b)(2)(D). In line with this goal, and in no uncertain terms, HERA empowers FHFA to exercise broad and discretionary powers to protect the assets of Fannie Mae and Freddie Mac. Congressional protections for FHFA and the Regulated Entities were enacted to promote their financial viability and efficiency, and by extension, the national economy. Plaintiffs argue that in order to effectuate Congress's goals, the Bar's protections *must* be read to cover homes encumbered by FHFA mortgages, because otherwise, municipal government or third-party liens could theoretically hamper FHFA's ability to preserve conservatorship assets. At oral argument, Plaintiffs posited that reading the Bar narrowly renders it practically useless because Fannie Mae, through FHFA, is in the business of holding mortgages and rarely acquires fee simple interests in land. Plaintiffs are correct that the Supreme Court has generally described Fannie Mae's business model in this manner. *See Lightfoot*, 580 U.S. at 85. But Plaintiffs point to no allegations in their complaint or

evidence in the record on the preliminary injunction motion that Fannie Mae's acquisition of fee interests is rare, nor any statutory language or legislative history that would necessitate such a finding.  Indeed, in at least one case on which Plaintiffs rely in their briefing, Fannie Mae *had* purchased the fee simple interest in a property.  *See City of Ansonia*, 549 F. Supp. 3d at 245, 247–48.

And even a clear congressional purpose—here, to stabilize and rehabilitate the housing finance market after the 2008 financial crisis—does not support the broad reading that Plaintiffs advance.  The language of the statute does not offer a reason to attribute to the phrase "property of the Agency" anything other than its plain meaning:  Plaintiffs own a mortgage interest, and not more.  *See 37 Huntington Street*, 62 Conn. App. at 697 ("Unbundling [the property rights at issue] in this case, we are not persuaded to extend a statutory prohibition against the attachment of city tax liens on property *owned* by the FDIC to property that the FDIC *does not own*.")  And Plaintiffs have not brought to the Court's attention any evidence in the legislative history suggesting Congress knew or assumed that FHFA or Fannie Mae would inherently hold an interest in underlying property simply by virtue of holding a mortgage (and therefore felt it unnecessary to explain such a principle or define "property" expansively).

Therefore, this Court concludes that the "property of the Agency" with respect to the Avon Property is Plaintiffs' mortgage interest.  As the judgment lien attached by the Town has attached to the fee interest in the Avon Property and not to Plaintiffs' mortgage interest, it is not void *ab initio* under the Federal Foreclosure Bar.  Moreover, as the Avon Property will pass with Plaintiffs'

interest intact if it is foreclosed upon, the Court holds that the Federal Foreclosure Bar does not protect the Avon Property from foreclosure.[5]

    C.  HERA's Other Protections

Plaintiffs' statutory protections are not limited to the Federal Foreclosure Bar. HERA contains numerous provisions apparently designed to ensure FHFA's ability to unilaterally manage its assets and operations without interference from government entities or private parties. *See N.J. Carpenters Health Fund*, 28 F.4th at 368–69. For example, 12 U.S.C. § 4617(f) limits the power of the courts with respect to FHFA's powers and functions and § 4617(a)(7) prevents FHFA from being subject to the direction of any other U.S. agency or any state. Plaintiff argues that each provides an independent ground to invalidate Defendants' lien and foreclosure. But, as with § 4617(j)(3), neither provision has been interpreted to stretch so far as to cover the facts before the Court—and the Court cannot find a reason to do so now.

First, 12 U.S.C. § 4617(f), often referred to as HERA's "anti-injunction clause," provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or a receiver." Plaintiffs argue that "permitting the judgment lien to attach and the foreclosure sale to occur (even subject to Fannie Mae's mortgage) would 'restrain or affect the exercise of the powers or functions of FHFA as conservator'" in contravention of the

---

[5] In their original brief in support of their motion for a temporary restraining order and preliminary injunction, Plaintiffs argued generally that the Supremacy Clause barred Defendants' actions. *See* ECF No. 2 at 2, 10. Their briefing did not, however, engage in a fulsome Supremacy Clause analysis, nor argue that any particular Connecticut statute or local regulation is preempted by § 4617(j)(3). *See generally id.*; *cf. City of Ansonia*, 549 F. Supp. 3d at 246 (explaining the legal standard for a Supremacy Clause argument). And at oral argument, Plaintiffs confirmed they are not requesting that the Court invalidate any particular state law as preempted by HERA. Tr., ECF No. 54 at 23. Given this position, the Court will not undertake a broader Supremacy Clause analysis directed at any particular state law.

anti-injunction clause. *See* Pls.' Obj. to Mot. to Dismiss, ECF No. 44 at 11. This position lacks support in the law.

To start, HERA's anti-injunction provision appears to operate as a jurisdictional bar to lawsuits *challenging FHFA's conduct*, protecting FHFA from suit so long as the agency conduct does not exceed the bounds of its statutory authority. *Cf.*, *e.g.*, *Collins v. Yellen,* 594 U.S. 220, 237 (2021); *N.J. Carpenters Health Fund*, 28 F.4th at 368–69 (collecting cases); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 605–06 (D.C. Cir. 2017) ("The plain statutory text draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator and receiver."); *Cnty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 990 (9th Cir. 2013) ("HERA substantially limits judicial review of FHFA's actions *as conservator*.") (emphasis added). In that sense, § 4617(f) has been interpreted to operate effectively as a shield, protecting FHFA against litigation initiated against it. Plaintiffs have not cited any cases in which a court has applied § 4617(f) as a sword, to allow it to dictate the actions of other courts or other parties.

Second, even if this Court were to forge a new path in applying § 4617(f) here, it finds such a broad reading of the provision untenable. Plaintiffs suggest that allowing the foreclosure to proceed subject to the FHFA mortgage would "restrain" FHFA's powers to collect on the mortgage debt, because once the home is sold, the Borrowers may have a declining interest in continuing to make payments. *See* ECF No. 44 at 11–12. At this juncture, this argument is speculative and does not justify extension of § 4617(f) to a scenario in which no other court has applied it. Additionally, by Plaintiffs' logic, FHFA could put a halt to any number of court actions that might, somewhere down the causal chain, make a borrower less likely to pay his mortgage. Further, to the extent Plaintiffs argue that § 4617(f) bars state *judicial* foreclosures of homes encumbered by FHFA

liens, such an interpretation threatens to create different substantive rights in different states. Many states, unlike Connecticut, permit non-judicial foreclosures, which take effect without any court involvement. *See* 12 Thompson on Real Property, Thomas Editions § 101.04(c)(1) (2025) (noting that "in about sixty percent of the states, foreclosure can be effected via a nonjudicial foreclosure"). Section 4617(f), by its terms, bars *judicial* interference, and thus would be unlikely to be interpreted to prevent a nonjudicial foreclosure in those states where such foreclosures are permitted. Finally, it does not stand to reason that Congress would have gone through the trouble of creating the Federal Foreclosure Bar if it planned for § 4617(f) to be a broader prohibition on any judicial activity that *may* have an impact, no matter how attenuated, on FHFA property. Such an interpretation violates the canon against surplusage, which counsels against any interpretation of part of a statute that would render another part of the statute superfluous. *See Panjiva, Inc. v. U.S. Customs and Border Protection*, 975 F.3d 171, 178 (2d Cir. 2020) (describing the canon).

Likewise, 12 U.S.C. § 4617(a)(7) is inapplicable here. That statute provides that FHFA "shall not be subject to the direction or supervision of . . . any State in the exercise of the rights, powers, and privileges of the Agency." First, by its terms, § 4617(a)(7) bars state direction or supervision; to the extent Plaintiffs argue that it governs the actions of a *municipality* seeking to foreclose on a judgment lien, they appear incorrect based on its plain language. Of course, to the extent Defendants are seeking to foreclose on their judgment lien under the state statute that provides for such a right, Conn. Gen. Stat. § 52-380a(c), it is possible § 4617(a)(7) could reach Defendants' conduct. But even then, the cases cited by Plaintiffs do not go as far as they suggest. In *Saxton v. Federal Housing Finance Agency*, 245 F. Supp. 3d 1063, 1077 (N.D. Iowa Mar. 27, 2017), for example, the court viewed § 4617(a)(7) as providing "a preemption defense *for FHFA* in its role as conservator." And in *Federal Housing Financing Agency v. City of Chicago*, 962 F.

Supp. 2d 1044, 1060 (N.D. Ill. 2013), the court held that § 4617(a)(7) resulted in field preemption, rendering Chicago's ordinances requiring FHFA to file a registration statement for vacant buildings as to which FHFA was a mortgagee and maintaining the buildings in accordance with certain standards preempted.  But Plaintiffs have not argued that any regulatory scheme at issue here is fully preempted, rendering these cases inapposite.  Finally, there is no indication that a judgment lien subsequent in right to FHFA's lien, or a foreclosure subject to FHFA's mortgage, constitutes impermissible "direction or supervision" of FHFA.  Neither the lien nor the mortgage has any impact on the value of FHFA's property interest (its mortgage), nor do they attempt to dictate what FHFA may do with it.  Lastly, to read § 4617(a)(7) as barring Defendants' actions here would likewise violate the canon against surplusage, for the same reasons as explained above.

Thus, sections 4617(a)(7) and 4617(f) fail to render Defendants' actions void because Defendants' lien and foreclosure create no cognizable interference with FHFA's property or authority.  Thus, the attachment and foreclosure of Defendants' lien are not barred by these statutes.

## IV.    CONCLUSION

For the reasons described herein, the Court concludes that 12 U.S.C. §§ 4617(j)(3), 4617(f), and 4617(a)(7) do not entitle Plaintiffs to the relief sought in their complaint.  Defendants' motion to dismiss is thus GRANTED as to both counts of the complaint, and Plaintiffs' request for a preliminary injunction is DENIED.  Having found that Plaintiffs fail to state claims for relief (and, as a result, are unlikely to succeed on the merits of their claims), the Court does not reach Defendants' other arguments for dismissal and dissolving the TRO, including the effect of a ruling in Plaintiffs' favor on municipal financing.

The Court orders the TRO in place in the Foreclosure Action dissolved, but will stay this dissolution order temporarily, until further order of the Court.  The Court will convene a status conference with the parties to discuss the parties' proposals as to the next steps for this litigation, including whether leave to amend the complaint should be permitted; whether discovery and further litigation are intended; and whether judgment should enter, permitting appeal.

**SO ORDERED** at Hartford, Connecticut, this 26th day of November, 2025.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE